Nash, C.
 
 J.
 

 The action is on a note of which the following is a copy : “ Eighty-eight days after date, we, Caldwell & Hagins, as principals, and E. T. McEntyre and "William B. Cochran, sureties, promise to pay to Thos.
 
 W.
 
 Dewey, cashier, or order, nine hundred and twenty-seven dollars. Yalue received. Negotiable and payable at the branch of the bank of the State of North Carolina, at Charlotte.” This note -was presented to the president of the proper bank, at Charlotte, when the holder was informed that the bank would not discount it. Mr. Hagins, one of the firm of Caldwell
 
 &
 
 Hagins, the principals in the note, took it to Charleston, in South Carolina, where he transferred it, by assignment, to S. S. Ear-
 
 *186
 
 rar
 
 &
 
 Brothers, in payment of a debt due them by Caldwell
 
 &
 
 Hagins.
 

 The action was brought to the County Court of Cabarrus, where judgment was rendered against all the parties to the note. Cochran alone appealed to the Superior Court. Cochran was one of the sureties.
 

 The first enquiry is as to the nature of the contract into which the sureties entered. They bound themselves to pay to Thomas Dewey, or his order, the stun mentioned in the. note. To the validity of every contract it is essential that it receive the assent of the parties, to be bound either as payers or performers. Parsons on Contracts, 399. In this case it is not pretended that Thomas Dewey ever accepted the note. On the contrary, the bank, through its president, and whose officer, Mr. Dewey was, refused to receive the note. There is, then, no contract between Mr. Dewey and the defendant. Mr. Dewey has not the legal title to the note. But the action is brought not for the benefit of Mr. Dewey or the bank, but for the use and benefit of Farrar & Brothers, to whom it was assigned by Hagins. Did they, by this agreement, acquire such an interest in tire note" as to enable them to bring this action in the name of Thomas Dewey, the original payee ? We think they did not. The note in question is made payable and negotiable at the branch of the bank of the State, at Charlotte. What is the meaning of the word negotiable ? It is admitted that the note is in the usual form of such instruments. Put into plain English, the word negotiable means that the money is to be -borrowed from the bank designated. The sureties bound themselves that if the bank would discount the note, they would pay it at maturity ; but they do not promise to pay any other holder of the note who does not claim through the bank. Many reasons might exist why they would not be willing to incur that responsibility when they would not be willing to incur it with a private individual. If the note was discounted at the bank, they knew that, after ninety days, they could take up the obligation or refuse
 
 to prolong
 
 their responsibility by joining in a renewal
 
 *187
 
 of the note, and then the bank might, and would, proceed to collect it. If negotiated'to a private individual, years might pass before they knew where it was, or before it was presented for payment, nor could they, until it was presented for payment, know certainly that it was outstanding; whereas, if in the bank, he would know where to go, and he could, at any time after maturity, ascertain whether it had been taken up and discharged by his principal, and, if not, be enabled to secure himself. It never was intended by the defendant that the note should be thrown into market in any other way than as pointed ont in his contract. The principle controlling the case is fully stated in
 
 Respass
 
 v.
 
 Latham,
 
 Bus. Rep. 138. That was an action of debt upon a sealed instrument, which was payable to Mrs. Parker. "When presented to her she refused to lend the money upon it, and it was returned to the obligors. Subsequently one of the obligors, and for whose-use the money to be raised was intended, induced the payee to endorse it without recourse, and the money was advanced upon it by the plaintiff. The Court say, “ The instrument, in its original concoclion, was not intended by the defendants to be thrown into market to raise funds from any one who would advance them, but from a specified individual, and that person refusing to lend money upon it, it must be shown that the defendants agreed to the new intent, that is, becoming bound to Eespass, which docs not appear.”
 

 In our case, the source from ’ which the money was to be borrowed is specified in the instrument, to wit, the branch bank of the State, at Charlotte; and the bank having refused to discount it, the note, as to the defendant, the surety, died, and could not be revived by a transfer to Farrar
 
 &
 
 Brothers without his assent. Of all this the beneficial owners were apprised from the face of the note. At any rate, the fact that Mr. Dewey, the original payee, as cashier of the bank, had not endorsed it, taken in connection with the tenor of the note, was sufficient to put them on the enquiry.
 

 
 *188
 
 According to the case agreed, the Judge below gave judgment of nonsuit, which is affirmed.
 

 Pee Cueiam. Judgment affirmed.